David R. Giles
Attorney at Law
34 Rynda Road
South Orange, New Jersey 07079
973-763-1500
davidgiles@davidgileslaw.com

Attorney for the Plaintiffs

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| J.S. and S.S., on behalf of A.S., | Civil Action No.: |
| Plaintiffs, | |
| v. | **VERIFIED COMPLAINT** |
| WEST MORRIS REGIONAL HIGH SCHOOL DISTRICT BOARD OF EDUCATION. | |
| Defendant. | |

Plaintiffs, J.S. and S.S., on behalf of A.S., residing in
Long Valley, by way of this verified complaint against the West
Morris Regional Board of Education, whose administrative offices
are located at 10 South Four Bridges Road, Chester, NJ 07930,
hereby allege as follows:

### JURISDICTION

1.  As Plaintiffs' claims are brought under the
Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C.
§§ 1400, *et seq.*, and New Jersey's Special Education Law,
N.J.SA. 18A:46-1, *et seq.*, this court has subject-matter
jurisdiction pursuant to 20 U.S.C. § 1415(i)(3)(A) and 28 U.S.C.

§§ 1331 and 1343, and supplemental jurisdiction pursuant 28 U.S.C. § 1367.

**VENUE**

2.  Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because the Defendant resides and the acts and omissions giving rise to Plaintiffs' claims occurred herein.

**PARTIES**

3.  Plaintiffs J.S. and S.S. are the parents of A.S.

4.  Plaintiff A.S. is a "child with a disability" entitled to a "free appropriate public education" ("FAPE") under IDEA. *See* 20 U.S.C. § 1401(3) and (9) (defining, respectively, the terms "child with a disability" and "FAPE").

5.  Plaintiffs are domiciled within the West Morris Regional High School District ("WMRHSD" or "the District").

6.  Defendant West Morris Regional High School Board of Education ("the Board" or "the District") is a "local educational agency" as that term is defined at 20 U.S.C. § 1401, as it is the body corporate responsible for the conduct and supervision of the District.

**FACTS**

7.  A.S. is a fourteen-year-old child with a disability eligible for special education and related services under the category, Other Health Impaired. *See* A30. She has been diagnosed with a Major Depressive Disorder, Attention Deficit

Hyperactivity Disorder, Dysgraphia, Nonverbal Learning Disorder, and Unspecified Neurodevelopmental Disorder. A33.

8.   A.S. lives with her parents and brother in Long Valley, New Jersey, on Schooley's Mountain Road, where the family has resided since 2006. As residents of Long Valley, A.S. and her brother have fallen within the jurisdiction of the Washington Township School District ("WTSD") for elementary school (kindergarten through eighth grade) and WMRHSD for high school. A.S. is currently a high school freshman, and her brother graduated from high school in June 2020.

9.   A.S. was originally classified on December 15, 2014. At that time, she attended Benedict A. Cucinella Elementary School. She attended Cucinella until June 2018 after which she was promoted to Long Valley Middle School. She attended Long Valley Middle School until the end of seventh grade in June 2020.

10.  From the time she was first classified in 2014 through June of 2020, her IEP called for A.S. to receive in-class support, counseling and a 1:1 aide (in middle school, she also received pull-out resource program services in math). Her IEP did not, however, include transportation because A.S., like her brother, and all other public elementary school students who live on Schooley's Mountain Road, already received transportation from WTSD.

11.  For thirteen years, from September 2007, when her brother started kindergarten, through June 2020, when A.S. last attended Long Valley Middle School, A.S. and her brother were picked up and dropped off every day in front of their home by a full-sized yellow bus that also picked up other WTSD students along Schooley's Mountain Road. Even today, WTSD continues to pick up A.S.'s non-classified ten-year-old next-door neighbor at her driveway using a full-sized yellow bus.

12.  In June 2020, at the end of her seventh grade, A.S. was placed by WTSD for eighth grade in an out-of-district placement, the Newmark School in Scotch Plains, New Jersey. A87. Transportation was added as a related services to her IEP. A112. The IEP team concluded that she required "curb to curb" transportation. *Id.*

13.  Accordingly, beginning in September 2020, A.S. was transported to and from Newmark by WTSD, and she continued to be picked up and dropped off in front of her home, but WTSD used a private vendor, K & S Transportation, which used a van to drive A.S. to and from school.

14.  On January 14, 2021, A.S.'s out-of-district placement was changed to Barnstable Academy in Oakland, New Jersey. A120. As her transportation needs remained the same, she continued to receive "curb to curb" transportation pursuant to her IEP. A144. However, because of the change in her bus route, WTSD changed

vendors and A.S. was transported to and from Barnstable by Prestige Bus Service which continued to pick her up and drop her off in front of her home using a van.

15.  On April 23, 2021, WTSD convened a "Transition IEP meeting" to plan A.S.' program for high school. Steven Deon, the Child Study Team Case Manager at West Morris Central High School participated in that meeting. A152.

16.  As Barnstable indicated that A.S. required a more therapeutic placement, her April 23, 2021 IEP called for her to remain at Barnstable for the remainder of the 2020-2021 school year and be placed in a private out-of-district therapeutic day school for ninth grade. A156, A164-165, A171 and A173. The IEP stated that "the district will send records to out of district placements with a therapeutic component to determine an appropriate program for [A.S.]'s freshman year of high school." A173. The IEP continued to provide for "curb to curb" transportation. A171.

17.  After considering and discussing her options for ninth grade, on June 22, 2021, A.S.'s parents toured Cornerstone Day School, one of the therapeutic day schools recommended during the April 23 meeting. A173. After their visit, they consented to sending A.S.'s records to Cornerstone for consideration.

18.  Meanwhile, on July 1, 2021, WMRHSD assumed responsibility for A.S.'s IEP.

19.   Because her parents and private therapist believed she required programming to address her social and emotional needs during the summer and pending a new placement, and her parents were also concerned that a back-up plan should be in place in case Cornerstone did not work out as a placement, they requested an "emergency" IEP team meeting to discuss her potential placement at Stepping Forward during the summer and potential placement at West Morris Central High School as a fallback in September.

20.   In response, the West Morris Central High School Child Study Team convened an IEP team meeting on July 14, 2021 to "hear" the parents "concerns" and input from A.S.'s therapist, but they denied the parents' request for an interim placement at Stepping Forward and did not change the plan to place A.S. in an out-of-district therapeutic day school placement.

21.   There was a discussion about sending A.S.'s records to Sage Day High School in Boonton, New Jersey, for consideration. Mr. Deon mentioned that if A.S. were not placed in a new out-of-district placement in time for the start of school in the fall, she would receive Home Instruction, but no one mentioned anything about her transportation.

22.   After the meeting, her parents did not receive written notice about any decisions made at the meeting or a copy of A.S.'s IEP.

23.   After the meeting, Mr. Deon and A.S.'s parents moved forward with the plan to refer A.S. to Sage. On or about July 15, 2021, A.S.'s parents consented to sending A.S.'s school records to Sage. Sage's intake process was completed and Sage accepted A.S. Her parents and Mr. Deon agreed to place her there for ninth grade.

24.   Although school began on August 25, 2021, and A.S.'s placement would not begin until September 10, 2021, the District never offered nor did A.S. ever receive Home Instruction.

25.   The District secured the placement at Sage and A.S. was scheduled to start there on September 10, 2021. On September 8, 2021, Mr. Deon advised J.S. that the Child Study Team had reached out to the District's Transportation Department to let them know of the start date so they could arrange her transportation.

26.   On September 9, 2021, J.S. inquired of Mr. Deon the status of A.S.'s placement and transportation arrangements so that they could plan if they had to transport her to Sage themselves. He responded by email at 2:57 p.m. that as of that time "I have received no confirmation regarding transportation for tomorrow … If there is a way to have [A.S.] driven tomorrow, I believe that would be the best option at this time." A177.

27.  A.S. did start at Sage on September 10, but WMRHSD did not arrange for transportation to begin on that day and her father had to drive her to and from Sage.

28.  In fact, he had to continue driving her to and from Sage, spending approximately three hours per day doing so (about 45 minutes each way), until October 8, 2021, after which WMRHSD finally secured transportation for her.

29.  J.S. repeatedly complained about the District's failure to transport A.S. to Sage.

30.  Initially, Mr. Deon assured her that the District was attempting to resolve the problem and make the necessary arrangements. In an email on September 20, 2021, Michael Reinknecht, WMRHSD's Director of Special Education, explained that the "district transportation coordinator [Nancy Genuardi] would, and will, provide transportation were a single vendor or in-district resource available, but despite Mrs. Genuardi's efforts, no vendors have bid on the route." A181.

31.  However, just two days later, in an email dated September 22, 2021, Mr. Reinknecht claimed "the District is not responsible to transport [A.S.]" to Sage because in a previously undisclosed and apparently newly discovered IEP dated July 14, 2021, it stated, "Transportation is not required." A186; A189 (draft IEP dated July 14, 2021).

32.  Mr. Reinknecht claimed that A.S. was not entitled to any transportation because the IEP "went into effect on the 16th day following the [July 14] IEP meeting" "because you [the parents] did not file for due process to block its implementation." A186.

33.  Although A.S.'s parents never received a copy of the July 14 draft IEP, in an email dated September 23, 2021, Mr. Reinknecht claimed that "this IEP was sent to you via regular post," A227, but he did not explain how he supposedly knew this. In response to J.S.'s email inquiry on the following day about the same, Mr. Deon could only say, "[a]n IEP should have been sent in the mail." A230.

34.  Notwithstanding his position regarding A.S.'s transportation, Mr. Reinknecht indicated that the District would "continue[] to try to identify a vendor to provide transportation for [A.S.] that can pick her up at your residence," A186, and offered until then "courtesy transportation" with a pick up and drop off at the Washington Township Municipal Building, *id.*, which is about a third of a mile from A.S.'s home.

35.  The District had secured a vendor, Cassidy Transportation, to drive A.S. to school, but it reportedly refused to drop off and pick up A.S. in front of her home for safety reasons. This was surprising since Cassidy had

transported A.S.'s brother for WMRHSD for three school years from September 2017 through June 2020 to and from an out-of-district placement, picking him up and dropping him off in a van in front of their home for the entire time. *See,* attached hereto, Exhibit A (excerpt from brother's November 14, 2019 IEP showing curb to curb transportation).

36.   Moreover, the District's own website states that:

A student with an IEP that requires transportation to school will ride the bus from their home to school, even if he/she is non-remote. The student does not need to apply for subscription busing. The IEP must state in writing that the student is required to ride the bus to school.

WMRHSD Website, Transportation Q & A.[1]

37.   Although A.S.'s parents had no choice but to accept the offered transportation, the drop off and pick up location at the Municipal Building is not appropriate because Schooley's Mountain Road is a busy road with no sidewalk or shoulder on either side for pedestrians to safely traverse. It would be unsafe for A.S. to walk to and from the Municipal Building every school day morning and afternoon. This is particularly so given her emotional and cognitive disabilities.

---

[1]
https://www.WMRHSDhsd.org/cms/One.aspx?portalId=65464&pageId=158193#If%20my%20child%20has%20an%20IEP%20(Individualized%20Learning%20Plan)%20that%20includes%20a%20requirement%20for%20busing,%20will%20he/she%20be%20offered%20busing%20even%20if%20he/she%20is%20non-remote?

38.  As explained by Sarah Amador, Ph.D., her therapist:

Her most prominent symptoms include very rigid
thinking patterns with limited ability to make
cognitive shifts, poor ability to transition from one
activity/location to another, dissociative episodes
resulting in a disconnect from her current
surroundings, refusal to comply to directives/commands
in the home and school setting, impaired functioning
in verbal and nonverbal interactions,
negative/catastrophic thinking style including
impaired emotional regulation and inability to sustain
attention to tasks. Since last spring, it was
determined by the IEP team that Abigail required a
more therapeutic program and since September, she has
been attending the Sage Day School.  With respect to
transportation to and from school, Abigail resides on
a very treacherous, mountainous street with no
shoulder for a pedestrian to walk along.  With all
things considered (physical danger of street,
Abigail's tendency to dissociate, and increased need
for therapeutic support), it is deemed necessary for
Abigail's physical and emotional safety that
transportation is provided door to door.

A232.

39.  While A.S.'s father has been able to drop her off and
pick her up at the Municipal Building since this transportation
began on October 11, 2021, this is only because he was laid off
in August from a full-time position he had as a Senior Program
Associate at a philanthropic foundation for the last ten years.

40.  He is looking for a new job as the family requires two
incomes. He expects to start working full-time again soon. When
he does, he will no longer be able to drop off and pick up A.S.
at the Municipal Building and it will be unsafe for her to walk

to and from there along Schooley's Mountain Road. She will no longer be able to attend Sage, unless she is provided curb to curb transportation by WMRHSD.

41.  Because the family lives approximately 4.6 miles from West Morris Central High School, if A.S. were not required by the District to attend Sage because of her disabilities, she, like all other high school students who live on Schooley's Mountain Road, would receive door to door transportation pursuant to the District's transportation policies.

42.  This would also be required under New Jersey's education laws and regulations that require school districts to "provide transportation to public school students who reside remote from their assigned school of attendance." N.J.S.A. 18A: 39-1; N.J.A.C. 6A:27-1.3 (a high school student is considered to live remote from school if they live more than two and one-half miles from school).

43.  Indeed, during his freshman year, when A.S.'s brother attended West Morris Central High School, he was picked up and dropped off in front of their home by a full-sized yellow bus just like all other public high school students who live on Schooley's Mountain Road.

44.  On October 5, 2021, A.S.'s parents filed on their own a request for a due process hearing to challenge the Board's refusal to provide "Curb to Curb" transportation as called for

by her April 23, 2021 IEP, A149, and to be reimbursed for
transporting A.S. to and from Sage from September 10 through
October 8, 2021. A11-16.

45.  After that, on October 12, 2021, a "30 Day Review" IEP
meeting was held to formalize A.S.'s placement at Sage. At that
meeting, the Child Study Team proposed to change A.S.'s
transportation from "Curb to Curb" as provided for in her April
23, 2021 IEP to transportation with the "pickup and drop-off
location" at the Washington Township Municipal Building. A64.

46.  A.S.'s parents expressed their concerns in the IEP:

> Mr. and Mrs. [S] are extremely concerned with the
> pick-up and drop-off location of the Washington
> Township municipal building as there are no sidewalks
> and the road is extremely dangerous and heavily
> traveled. Should there be no one to drop off or pick
> up [A.S.] from the Washington Township municipal
> building, she would be unable to go to school.
> A36.

47.  Although the Board did not provide a formal response
in the notice of rights section of the IEP, A68, Mr. Deon did
explain in an email that the District would not allow him to
include curb to curb transportation on an IEP, regardless of the
student's circumstances, unless the student had a physical
disability. He wrote:

> Barring any physical disabilities, I am unable to put any
> type of curb-to-curb/home pickup in any student's IEP. I
> have included "at this time" in case anything were to
> change for the future. If that is indeed the case and I am
> given a different directive, I would be happy to amend

accordingly. That being said, I have still outlined your
concerns regarding this matter. If you would prefer, I
could remove this comment section, though that would also
not denote a curb-to-curb scenario, it would just specify
that transportation is mandated. If you are able to reach a
different agreement with the transportation company, we can
go from there as well.

A236.

48.  Even though, under IDEA's stay-put provision, the
District was required to maintain A.S.'s then-current
educational placement, which pursuant to her April 23, 2021 IEP
includes curb to curb transportation, and could not implement
the change proposed on October 12, 2021 without her parents'
consent - since her due process petition was filed before then
on October 5, 2021 - the District refused to implement or
acknowledge responsibility for the curb to curb transportation
called for in the April 23, 2021 IEP pending a due process
hearing.

49.  On October 25, 2021, the parties engaged in mediation,
but they were not able to resolve their dispute.

50.  On or about November 9, 2021, and through early
December, the parties engaged in settlement discussions
facilitated by the Honorable Danielle Pasquale, Administrative
Law Judge ("ALJ"), but they were still unable to resolve their
dispute.

51.  On January 5, 2022, the undersigned attorney filed on
behalf of A.S. and her parents a motion for emergent relief to

enforce stay-put seeking an order compelling the District to implement the curb to curb transportation in A.S.'s stay-put IEP. In support of that motion, A.S.'s parents submitted the Certification of J.S. and Exhibits attached thereto. A19-237.

52.  On January 14, 2022, the matter was assigned to the Honorable Judge-Anthony Tiscornia, ALJ, for a hearing on the stay-put motion. He scheduled oral argument on January 25, 2022, and permitted the Board to file its opposition by the end of the day on January 24, 2022.

53.  On January 24, 2022, the Board filed its opposition to the stay-put motion. The only evidentiary support submitted by the Board consisted of the Affidavit of Michael Reinknecht. A238-241.

54.  In support of a brief reply filed before the hearing, A.S.'s parents submitted the Supplemental Certification of J.S. A242-244.

55.  On January 25, 2022, ALJ Tiscornia held oral argument via Zoom, and, on January 26, 2022, he issued a Final Decision – Emergent Relief denying the parents' motion. A1-9.

56.  Although he found that A.S.'s stay-put placement included curb to curb transportation, he concluded, without any basis, that "'curb to curb' suggests on its face that the pick-up occur at the nearest and safest curbside location," A7, and furthermore, that, "in the present case," the nearest and safest

curbside location "appears to be the municipal building a few hundred yards away from the petitioner's front door."[2]

57.  He did not take into account the undisputed evidence that A.S. and her brother, as well as all other public school students who live on Schooley's Mountain Road, had been transported door to door for at least thirteen years by WTSD and WMRHSD or the undisputed evidence that it would be dangerous for A.S. to walk to and from the Municipal Building every school day morning and afternoon.

58.  He also failed to recognize that, under IDEA, FAPE means special education and related services that, among other things, "have been provided at public expense, under public supervision and direction, and without charge," 20 U.S.C. § 1401(9)(A), and, therefore, that the Board cannot require parents to provide part of the transportation required by a student's IEP.

59.  The Office of Administrative Law still has not scheduled a plenary hearing on the merits of A.S.'s parents' request for a due process hearing, which regards whether A.S. requires curb to curb transportation as a related service under IDEA.

---

[2] It is not known from where Judge Tiscornia derived his estimation of the distance from A.S.'s home to the Municipal Building.

**COUNT I**
**VIOLATION OF "STAY-PUT" – IDEA**

60.  Plaintiffs incorporate by reference paragraphs 1-59, above, as if fully set forth herein.

61.  Under IDEA, "during the pendency of any proceedings conducted pursuant to [IDEA's procedural safeguards], unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j). This is known as "stay-put."

62.  "[T]he dispositive factor in deciding a child's 'current educational placement' should be the [IEP] actually functioning when the 'stay put' is invoked." *Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 867 (3d Cir. 1996) (internal quotes and citations omitted). Generally, that is the child's last agreed upon IEP. *Id.* at 862, n. 3.

63.  Pending a due process hearing, a school district may not unilaterally change one of the basic constituent elements of a student's IEP, including transportation, if the change "is likely to affect in some significant way the child's learning experience." *DeLeon v. Susquehanna Cmty. Sch. Dist.*, 747 F.2d 149, 153 (3d Cir. 1984).

64.  Here, the Board's refusal to implement the curb to curb transportation in A.S.'s current IEP has left her without

transportation necessary for her to safely go to school and, therefore, eliminated from her IEP a related services required for her to even go to school.

65.   While A.S.'s father up to now has been able to transport her to and from the Municipal Building every morning and afternoon so that she can go to school, it is a violation of IDEA, which requires that special education and related services be "provided at public expense, under public supervision and direction, and without charge," 20 U.S.C. § 1401(9)(A), for the District to rely on A.S.'s parents to provide her the transportation required by her IEP.[3]

66.   As the Board has failed to maintain A.S.'s current educational placement pending a plenary hearing regarding the appropriateness of the Board's decision to, initially, discontinue her transportation, and, subsequently, eliminate curb to curb transportation from her IEP, it has violated her right to stay-put.

67.   Unless this Court orders the Board to provide A.S. the curb to curb transportation called for by her current IEP, the Board will continue to deny her transportation called for by her IEP that she requires to go to school, and, as soon as her

---

[3] It is also an unsustainable situation as he needs to work and will not be able to continue doing so once he gets a new job.

father gets a new job, she will no longer be able to go to school.

**WHEREFORE,** Plaintiffs demand judgment against the Board and the following relief:

A.   An order reversing the ALJ's decision denying Plaintiffs' stay-put motion;

B.   An order directing the Board to immediately provide A.S. curb to curb transportation as called for by her April 23, 2021 IEP, with a pick up and drop off in front of her home, and to continue such transportation until a final resolution of the issues raised in her request for a due process hearing;

C.   An award of reasonable attorney's fees and costs; and

D.   Such other relief as is just and proper.

Dated: February 2, 2022

_____
Attorney for Plaintiffs

**VERIFICATION**

I, J.S., hereby certify and say:

1.   I am a plaintiff in the above-captioned matter.

2.   I have read the foregoing Verified Complaint and know the contents thereof.

3.   The contents are true to my knowledge.

Dated: January 31, 2022

_____
J.S., Plaintiff

# Exhibit A

Individualized Education Program (NJIEP) for ████ (320205220)

# West Morris Regional High School District
## Department of Special Education

**10 South Four Bridges Road**

**Chester, New Jersey 07930**

**908-879-6404**

## Individualized Education Program (IEP)

| | | | |
|---|---|---|---|
| **State ID:** | 8163357722 | **Grade:** | Twelfth grade |
| **ID:** | 320205220 | **Birth Date:** | ████ |
| **Parent/Guardian:** | ████ | | |
| **Parent/Guardian:** | ████ | **Gender:** | Male |
| **Address:** | ██ Schooley'S Mountain Rd | **Ethnic:** | White |
| **City:** | Long Valley | **Primary Location:** | Newmark High School |
| **State:** | New Jersey | **IEP Type:** | Annual Review (Following a Reevaluation) |
| **Zip Code:** | 07853 | | |
| **Home Phone:** | 973-464-1204 | **IEP Meeting Date:** | 11/14/2019 |
| **Emergency Phone:** | | **IEP Start Date:** | 11/14/2019 |
| | | **Annual Review Due Date:** | 11/13/2020 |
| **Eligibility Category:** | Autistic | **Reevaluation Due Date:** | 11/13/2022 |
| **Case Manager:** | Maryann Gill, Psy.D. | | |
| **Case Manager Phone:** | 908-879-5212 x3510 | **Related Services** Counseling | |
| **Limited English Proficient:** | ☐ Yes ☑ No | | |
| **Parent Consent to Implement Initial IEP:** | | **Transportation Services** Curb to Curb | |

Individualized Education Program (NJIEP) for Caleb Simon (320205220)

Name: ▓▓▓▓                                                              Birth Date: 06/01/2002

# Program Description

| Name: | ▓▓▓▓ | Grade: | Twelfth grade |
|---|---|---|---|
| Primary Location: | Newmark High School | Primary Placement Time: | Full time students |
| Tuition paid for Primary Location: | ☐ | Residential costs paid: | ☐ |
| Secondary Location: | | Secondary Placement Time: | |
| IEP Start Date: | 11/14/2019 | Program Type | Behavioral Disabilities Special Class |
| Next Year's Grade: | Twelfth grade | | |

## Statement of Special Education and Related Services

*State the special education services by instructional area. For in-class programs also state the amount of time the resource or supplementary instruction teacher is present in the general education class [N.J.A.C. 6A:14-3.7(e)4 and N.J.A.C. 6A:14-3.7(3)8]. For pull-out replacement resource and special class programs, state the amount of instruction in each subject area, which must be equal to the amount of instructional time in general education for each subject area [N.J.A.C. 6A:14-4.1(l)]. All times are approximate within the context of the daily school schedule and will be consistent with the school year calendar unless otherwise noted.*

| Subject | Service Start Date | Service End Date | Frequency | Duration (minutes/session) | Type of Service |
|---|---|---|---|---|---|
| courses provided by Newmark | 11/14/2019 | 06/11/2020 | 5 times per week | 58 | Out of District |

**Additional Special Education Program Information:**

For 2018-19 school year Caleb will participate in junior classes at Newmark including:
English 11, Chemistry, Intermediate Algebra, PE/Health 11, US History 2, Tech 11, Art 11, Financial Lit
For 2019-20 school year Caleb will participate in senior classes at Newmark on a modified schedule as he has chosen to participate in the Challenger program at CCM. Those course may include: English 12, Algebra 2, PE/Health 12, Art, Global Economics, SLE

## Related Services

*State the related services [N.J.A.C 6A:14-3.7(e)4]. Include, as appropriate, a statement of integrated therapy services to be provided. Specify the amount of time the therapist will be in the classroom. If speech-language services are included, specify whether the services will be provided individually or in a group. Specify the group size. [N.J.A.C 6A:14-3.7(e)5, N.J.A.C. 6A:14-3.7(e)8 and 6A:14-4.4(a)1i].*

| Service | Start Date | End Date | Frequency | Duration (minutes/session) | Provider | Location |
|---|---|---|---|---|---|---|
| Individual Counseling services | 11/14/2019 | 06/11/2020 | 1 time per week | 40 | Staff | Therapy Room |
| Group Counseling services | 11/14/2019 | 06/11/2020 | 1 time per week | 40 | Staff | Therapy Room |

## Transportation

| Service | Start Date | End Date |
|---|---|---|
| Curb to Curb | 11/14/2019 | 06/11/2020 |

**Additional Related/Intensive Service Information:**

▓▓ will attend Newmark school on Tuesdays, Thursdays, and Fridays.

Individualized Education Program (NJIEP) for ▮▮▮▮ (320205220)

**Name:** ▮▮▮▮                                                              **Birth Date:** ▮▮▮▮

## IEP REVIEW:

*This form is to be used for all IEPs that are developed after consent for the Initial IEP has been provided. Your signature is NOT required for implementation of this IEP after 15 days have expired from the date written notice was provided.*

You have the right to consider the proposed IEP for up to 15 calendar days. To have the IEP services start before the 15 days expire, you must sign below. If you take no action, the IEP will be implemented after the 15th day from the date notice is provided.

If you disagree with the IEP and you do not request mediation or a due process hearing from the New Jersey Department of Education, Office of Special Education Programs, the IEP will be implemented without your signature after the 15 days have expired.

☐ I/We have received a copy of the proposed IEP and agree to have the IEP services start before the 15 calendar days have expired.

☐ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ of the proposed IEP and do not agree to have the IEP services start before the 15 calendar days

Sig ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮         11/14/19

Date