David R. Giles
Attorney at Law
34 Rynda Road
South Orange, New Jersey 07079
973-763-1500
davidgiles@davidgileslaw.com

Attorney for the Plaintiffs

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| J.S. and S.S., on behalf of A.S., | <u>Civil Action</u> |
| Plaintiffs, | No. |
| v. | **APPENDIX OF THE OAL STAY PUT HEARING RECORDS** |
| WEST MORRIS REGIONAL HIGH SCHOOL BOARD OF EDUCATION. | |
| Defendant. | |

## TABLE OF CONTENTS

Final Decision – Emergent Relief, January 26, 2022.........1

Due Process Hearing Request, September 22, 2021...........10

Certification of J.S. in Support of Petitioners' Motion
for Emergent Relief to Enforce Stay-Put...................19

      Exhibit A, IEP dated October 12, 2021................29

      Exhibit B, IEP dated June 10, 2020..................86

      Exhibit C, Amended IEP dated January 14, 2021.......116

      Exhibit D, IEP dated April 23, 2021.................148

      Exhibit E, Email dated September 9, 2021............176

      Exhibit F, Email dated September 20, 2021...........180

      Exhibit G, Email dated September 22, 2021...........185

      Exhibit H, draft of an IEP dated July 14, 2021......188

      Exhibit I, Email dated September 23, 2021...........226

      Exhibit J, Email dated September 24, 2021...........229

      Exhibit K, Letter by Sarah Amador, Ph.D., dated
      November 22, 2021...................................231

      Exhibit L, October 12, 2021 IEP (omitted, see Exhibit A)
      233

      Exhibit M, Email dated October 12, 2021............234

Affidavit of Michael Reinknecht.........................238

Supplemental Certification of J.S. in Support of
Petitioners' Motion For Emergent Relief to Enforce
Stay-Put................................................242



## *State of New Jersey*

OFFICE OF ADMINISTRATIVE LAW

**FINAL DECISION – EMERGENT RELIEF**

OAL DKT. NO. EDS 08829-21

AGENCY DKT. NO. 2022-33461

**J.S. and S.S. ON BEHALF OF A.S.,**

      Petitioner,

          v.

**WEST MORRIS REGIONAL BOARD OF EDUCATION,**

      Respondent.

_____

    **David R. Giles,** Esq., for petitioner

    **Jodi S. Howlett,** Esq., (Cleary Giacobbe, Alfieri & Jacobs, LLC) for respondent

Record Closed[1]: January 25, 2022              Decided: January 26, 2022

BEFORE **JUDE-ANTHONY TISCORNIA**, ALJ:

---

[1] This matter is final with record closed only as to the Application for Emergent Relief.  As set forth below, the due process petition remains at the OAL at which time the record closed.

OAL DKT.NO. EDS 08829-21

J.S. and S.S. o/b/o A.S. (petitioner) filed a request for emergent relief seeking enforcement of stay put protection regarding curb-to-curb transportation of A.S. from her home in Long Valley, NJ to her out-of-district placement at Sage Day High School located in Boonton, NJ.

## Factual Discussion

A.S. is a fourteen-year-old minor child eligible for special education and related services under the classification of "other health impaired".  A.S. lives within the West Morris Regional Board of Education (respondent) district, and as such, respondent is the local education agency currently responsible for providing A.S. with a Free, Appropriate Public Education ("FAPE").

Prior to becoming a (high school) student in the West Morris Regional High School District, A.S. was a special education (middle school) student in the Washington Township School District (Washington Township).  While still as student at Washington Township, a transitional IEP was put in place on April 23, 2021, (April IEP) which called for A.S.'s continued placement at Barnstable Academy pending her placement at a new out-of-district private therapeutic day school.  This IEP also provided for curb-to-curb transportation from A.S.'s home to Barnstable.  Accordingly, A.S.'s placement at Barnstable and curb to curb transportation continued through the end of the 2020- 2021 school year.

On July 1, 2021, following the completion of A.S.'s eighth (8th) grade year, A.S. became a student of the West Morris Regional High School District. On July 14, 2021, at the request of petitioners, the West Morris Regional High School District convened an IEP meeting.  Petitioners and A.S. attended this meeting virtually.  The IEP resulting from the meeting called for A.S. to be placed on home instruction pending her acceptance to an appropriate out-of-district placement.  Because A.S. would be receiving home instruction under this IEP, transportation was not provided as a "related service" therein. Petitioners did not sign off on this July 14, 2021, IEP, but rather said IEP was implemented upon the expiration of the fifteen (15) day notice period pursuant to N.J.A.C. 6A:14-2.3(h).

2

A002

OAL DKT.NO. EDS 08829-21

A.S. was ultimately placed at Sage Day High School, a private therapeutic day school, beginning on September 10, 2021, (the start of the 2021-2022 school year).  The July 14, 2021, (July IEP) transitional IEP contemplated A.S. remaining on home instruction awaiting acceptance to an out-of-district placement.  Thus, the district claims, said IEP did not provide for transportation as a related service.  Nevertheless, upon A.S.'s acceptance to Sage, the District put A.S.'s transportation contract out to bid, with Cassidy Transportation Company (Cassidy) ultimately winning the bid.   Cassidy was then employed by the district to transport A.S. (via school bus) to Sage.

A.S.'s dwelling is located on the side of a steep mountain road with no sidewalk or shoulder.  After securing the transportation contract, Cassidy informed the district that the area immediately Infront of A.S.'s home was too dangerous an area for their school bus to safely stop.  Thus, both the district and Cassidy resolved to pick A.S. up and drop her off each day at the Washington Township municipal building, which located approximately one third of a mile (1,760 feet) down the road from A.S.'s home.  Thus, one of A.S.'s parents has been responsible for diving A.S. to and from this municipal building before and after school each day, which they have been doing and continue to do each school day.

Petitioners filed an underlying due process petition on October 5, 2021, challenging the district's failure to provide for curb-to-curb transportation for A.S.  The matter was transmitted to the OAL on October 25, 2021, and was assigned to the Honorable Danielle Pasquale, ALJ.  At the time of the filing of the petition, A.S.'s last agreed-to and implemented IEP, was the April 23, 2021, IEP.  Subsequent to the filing, on October 12, 2021, the district, once again, convened an IEP meeting, and proposed an IEP that contemplates A.S.'s current placement at Sage and provides for transportation between the municipal building and Sage as a related service.

On January 5, 2022, the petitioners filed an emergent petition for due process seeking enforcement of Stay Put.  Petitioners argue that, because the last agreed upon

3

OAL DKT.NO. EDS 08829-21

IEP of April 23, 2021, provided for curb-to-curb transportation as a related service, that curb to curb transportation as a related service remains the stay put transportation provision while the underlying due process petition is heard.

## LEGAL ANALYSIS AND CONCLUSIONS

Regarding emergent applications, one applicable regulation is N.J.A.C. 6A:14-2.7(r), which provides in pertinent part as follows:

1.  Emergent relief shall only be requested for the following issues:
    i.   Issues involving a break in the delivery of services;
    ii.  Issues involving disciplinary action, including manifestation determinations and determinations of interim alternate educational settings;
    iii. Issues concerning placement pending the outcome of due process proceedings; and
    iv.  Issues involving graduation or participation in graduation ceremonies.

Here, petitioner seeks enforcement of the stay put provision regarding the related service of transportation.  Petitioners argue that the district's failure to find a way to pick A.S. up directly Infront of their home or "curbside" as the April 25, 2021 IEP provides constitutes a break in services.  Thus, by filing the forgoing emergent petition, petitioner is attempting to avoid a break in services should the underlying due process petition succeed, and thus, I **CONCLUDE** that the relief sought by petitioner here satisfies (i) above.

More generally, emergent relief is available pursuant to N.J.A.C. 1:6A-12.1(e), N.J.A.C. 6A:3-1.6(b) and N.J.A.C. 6A:14-2.7(s), if the application meets the following four requirements:

1.  The petitioner will suffer irreparable harm if the requested relief is not granted;
2.  The legal right underlying the petitioner's claim is settled;

OAL DKT.NO. EDS 08829-21

     3.     The petitioner has a likelihood of prevailing on the merits of the underlying claim; and

     4.     When the equities and interests of the parties are balanced, the petitioner will suffer greater harm than the respondent will suffer if the requested relief is not granted.

Petitioner, however, argues that they are seeking nothing more than enforcement the existing "stay put" provision already in place via the April IEP. Thus, he argues, the above four pronged requirements need not be met as he is entitled to enforcement by law. To this point, the seminal case of Drinker by Drinker v. Colonial School District, 78 F.3d 859 (3d Cir. 1996), identifies section 1415(e)(3) of the IDEA as a form of injunctive relief, to which a petitioner is entitled, pending the outcome of an underlying due process petition:

> Section 1415(e)(3) of the IDEA functions, in essence, as an automatic preliminary injunction. Zvi D. v. Ambach, 694 F.2d 904, 906 (2d Cir. 1982). As the Court of Appeals for the Second Circuit has stated, "the statute substitutes an absolute rule in favor of the status quo for the court's discretionary consideration of the factors of irreparable harm and either a likelihood of success on the merits or a fair ground for litigation and a balance of hardships." Id. (citations omitted); see also Woods v. New Jersey Dep't of Educ., No. 93-5123, [**15] 20 Indiv. Disabilities Educ. L. Rep. (LRP Publications) 439, 440 (3d Cir. Sept. 17, 1993). 12

> The provision represents Congress' policy choice that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved. Once a court ascertains the student's current educational placement, the movants are entitled to an order without satisfaction of the usual prerequisites to injunctive relief.

> [*865] Woods, 20 Indiv. Disabilities Educ. L. Rep. (LRP Publications) at 440. The relevant inquiry under section 1415(e)(3) thus becomes the identification of "the then current educational placement," 13

A005

OAL DKT.NO. EDS 08829-21

440; Zvi D., 694 F.2d at 906. As the Court of Appeals for the Second Circuit explained in Zvi D.:

> Implicit in the maintenance of the status quo is the requirement that a school district continue to finance an educational placement made by the agency and [**16] consented to by the parent before the parent requested a due process hearing. To cut off public funds would amount to a unilateral change in placement, prohibited by the Act.

Id. at 864 (quoting Zvi D. v. Ambach, 694 F.2d 904, 906 (2d Cir.1982)).

Based on the foregoing, I **CONCLUDE** that petitioner does not need to meet the four-pronged requirements to succeed on an emergent action as cited above, because he is entitled to enforcement of the stay put provision of the IEP as a form of injunctive relief pending the outcome of the due process petition. As the current petition is an emergent petition to enforce "stay put" we must first determine which of the aforementioned IEP's constitute the "stay put" for purposes of this proceeding, keeping in mind that the IEP is "the centerpiece of the statute's education delivery system for disabled children." Endrew F. v. Douglas Cty. Sch. Dist. RE-1, 137 S. Ct. 988, 994 (2017), citing Honig v. Doe, 484 U.S. 305, 311 (1988). "The IEP is the means by which special education and related services are 'tailored to the unique needs' of a particular child. Id., citing Rowley, 458 U.S. at 181.

While petitioner argues the April IEP constitutes "stay put", as it was the last IEP agreed to by the parents, the district asserts that the April IEP expired effective June 16, 2021, and thus, the curb-to-curb transportation aspect contemplated by that IEP expired along with it. The district further asserts that the July 14, 2021, IEP constitutes A.S.'s stay-put placement for purposes of these proceedings. The issue with both of these arguments is that neither IEP actually contemplates the child's current placement at Sage. The April IEP provides for placement at a prior middle school facility that AS has aged out of, and the July IEP provides for at-home instruction while A.S. awaits acceptance into a high school program.

A006

OAL DKT.NO. EDS 08829-21

While the district argues that the July 14, 2021, IEP is the stay put IEP, I **DISAGREE.**  I **FIND** the parents of A.S. did not agree to the July IEP and the appeal of said IEP gave rise the underlying plenary due process petition, which, as the current emergent petition, challenges the sufficiency of the transportation provision contained therein. I, thus, **CONCLUDE** that the April IEP is the "stay put" for purposes of this emergent hearing.

Operating under the assumption that the April IEP constitutes "stay put", petitioner argues that, since Transportation is a "related service" under IDEA. 20 U.S.C. § 1401(26), A.S. is entitles to "curb to curb" transportation as outlined in that April IEP.  However, the District here has not attempted to remove the transportation element of the child's programing altogether.  Rather, it appears that the District originally solicited bids for the transportation to occur, intending that the child would, in fact, be picked up "curbside" in front of her home, if possible.  However, the third-party bus company informed the District subsequent to the contract being rewarded that such a pick-up would be unsafe due to the nature of the equipment being implemented (the school bus) and the inherent danger of the narrow, steep, mountain road, with no shoulder, where the A.S.'s dwelling is located.  The current pickup/drop off location at the municipal building is the closest "curbside" location where a pick-up/drop-off can safely be effectuated.   Thus, I **CONCLUDE** the current transportation arrangement was not implemented in order to remove or otherwise change the curb-to-curb transportation provision, but rather, a resolution to execute said provision as safely as possible.

It should further be noted that, as the petitioner's attorney pointed out at the hearing, the "stay put" calls for "curb to curb" and not "door to door" transportation.  While the distinction may seem small, in the present matter, it is an important one.  I **CONCLUDE** that while "door to door" implies that the pickup be effectuated immediately outside A.S.'s front door, "curb to curb" suggests on its face that the pick-up occur at the nearest and safest curbside location, which, in the present case, appears to be the municipal building a few hundred yards away from the petitioner's front door.

OAL DKT.NO. EDS 08829-21

While the district argues the current transportation plan in no way affects A.S.'s ability to access FAPE, petitioner argues the need to get to and from the drop off point at the municipal building one third of a mile (or approximately 1760 feet) away from petitioner's home is a severe impediment to A.S.'s ability to access FAPE.  Petitioner argues that the short stretch of road in question, as the bus company pointed out, is dangerous, and A.S. would be putting herself in harms way walking along it.  While it is undisputed that, to date, A.S.'s father routinely drives her down the road to the municipal building in the morning and retrieves her from there at the end of the school day in the afternoon, petitioner argues that this daily occurrence is overly burdensome and demands the district figure out a way to execute a curbside pick-up directly in front of A.S.'s home. To bolster their position, petitioner notes that he is currently unemployed, which enables him to conduct this daily routine.  He argues, however, if her were to become employed, he may not be able to guarantee his availability, and thus, A.S.'s access to her FAPE would, most certainly, be adversely affected.

If, arguendo, the current transportation plan constituted a change to the "stay put" transportation plan, then we must considered that a change in that "related service" may constitute a change in a child's programming and overall access to FAPE, **I CONCLUDE,** for purposes of the present emergent matter, that any perceived deviation from the curb-to-curb plan described in the April, 2021, "stay put" IEP would be a minor, and one made only in the interest of safety.  The current transportation plan, therefore, would remain still adequate. This notion is further bolstered by the Court's decision in <u>DeLeon v. Susquehanna Community School Dist.,</u> 747 F.2d 149 (1984), where the court found that "Under some circumstances, transportation may have a significant effect on a child's learning experience. Minor changes in the daily transportation routine, however, will not generally have such an impact on the child's learning experience" (Id at 153)

For the reasons cited above, petitioner's application must be **DENIED**, as I **CONCLUDE** 1) the April 2021 IEP is the "stay put" and 2) the "curb to curb" transportation

A008

OAL DKT.NO. EDS 08829-21

provision as a related special education service as described in the April IEP is currently being implemented to the best of the district's ability.

## ORDER

It is, hereby, **ORDERED** that petitioner's request for emergent relief be **DENIED**, as the transportation provision under "stay put" is already being implemented. I further **ORDER** that the current curb-to-curb transportation provision remain in effect as long as A.S. remains at her out-of-district placement.

This order on application for emergency relief shall remain in effect until issuance of the decision in the matter. The parties will be notified of the scheduled hearing dates. If the parent or adult student feels that this decision is not being fully implemented with respect to program or services, this concern should be communicated in writing to the Director, Office of Special Education Policy and Dispute Resolution

January 26, 2022

_____
DATE

**JUDE-ANTHONY TISCORNIA**, ALJ

Date Received at Agency          1/26/22 _____

Date Mailed to Parties:          1/26/22 _____

id

A009